Olive M. LILE *v.* Sherry MATTHEWS

CA 79-331                                       598 S.W.2d 755

Court of Appeals of Arkansas
Opinion delivered April 9, 1980
Review denied May 14, 1980
Released for publication May 14, 1980

*Jim Hamilton* and *Harold Madden* and *Friday, Eldredge & Clark,* by: *John Dewey Watson,* for appellant.

*R. David Lewis,* for appellee.

DAVID NEWBERN, Judge. This is a slander case in which we are asked to reverse a judgment awarding the appellee general damages of $14, $30,000 compensatory damages and $20,000 punitive damages. The appellant asserts, at first, two errors consisting of admissions of hearsay evidence. We agree with the appellant, but we find one of these errors was not prejudicial and the other went only to the question of damages and thus does not require complete reversal. The appellant argues further with respect to privileged communication. We do not find that argument persuasive.

The appellant, Olive Lile, was in the practice of befriending young persons whom she hired as companions and helpers. They lived in her home and helped with domestic and business chores. The appellee, Sherry Matthews graduated from high school. She lived with the appellant two months. The appellee's testimony was that she left the appellant's home and employ because she was somehow being "used" in financial transactions. While helping Ms. Lile balance her checkbook she found a cancelled check made out to her (the appellee) for $200 which she had not seen before. When she questioned Ms. Lile about it, Ms. Lile allegedly was unresponsive. The appellee said she was paid no wages by Ms. Lile, other than her room and board, but was allowed to charge items to Ms. Lile's accounts at various stores from time to time.

The appellee testified that she was arrested and tried in 1975 for possession of stolen property, two costume jewelry bracelets and a clock, which Ms. Lile accused her of having taken. The appellee contended all three items were gifts from Ms.Lile, and that the clock had not been removed from the appellant's home. That criminal trial resulted in the judge holding the case for one year after a hearing and then dismissing the charge.

In 1976, Cohn's Department Store brought suit against the appellee and the appellant to collect for some items charged to Ms. Lile for which she refused to pay because the

charge tickets had been signed by the appellee. Ms. Matthews had signed her own name and not that of Ms. Lile. The suit was dismissed as to the appellee.

Freda Hendricks testified she was, in 1977, living in Ms. Lile's home in a capacity like that described by the appellee, and upon entering Ms. Lile's bedroom to deliver her newspaper one morning, she heard Ms. Lile talking on the telephone and describing the appellee as being "on dope," and a thief as well as other remarks alleging she was sexually promiscuous. Ms. Henricks testified that Ms. Lile hung up the phone and told Ms. Hendricks she had been speaking with Mr. Stockard of Kempner's Department Store because she had seen the appellee acting in a television commercial presented by the store, and she wanted to warn him. Ms. Hendricks testified the appellant called Dillard's and Montgomery Ward's before Ms. Hendricks left the room, and from another part of the house she later heard the appellant repeating the message the appellant had allegedly given Mr. Stockard.

The appellee testified that she heard about the allegations made to Kempner's, and at that point she was highly embarrassed and depressed. She consulted a physician and was given medication. She said she thereafter gave up her fledgling modeling career because she was too embarrassed to seek work.

Other facts will be stated as necessary.

### 1. *Hearsay Identification*

At the trial, part of the deposition of Patti George was read into evidence. The essence of the textimony was, first, that Mr. Stockard had stated to Mr. Lynn Kempner in the presence of Ms. George that he had been told Sherry Matthews was a thief and "involved with drugs" and had "forged an account." Mr. Stockard did not, on that occasion, reveal the source of that information. At the trial, he denied that it had come from Ms. Lile. Secondly, Ms. George testified as follows:

Q. Had Mrs. Lile been on the [Kempner's] premises anytime shortly before this conversation with Mr. Kempner?

A. Yes she had.

Q. Can you tell me what about?

A. I don't know if it was the day before or — I believe I was walking to the elevator. I don't know Mrs. Lile. There was an elderly woman sitting in a chair outside his office. . . . I asked Mrs. Cohn, who works at Kempner's who the lady was. She said it was Mrs. Lile . . .

This testimony had been objected to earlier in the proceedings, and the objection was renewed in a specific and timely manner. The objection was that Ms. Cohn's identification of Ms. Lile was hearsay. The appellee argues it was not, citing cases which appear to have admitted identification evidence of this sort without much discussion why it does not violate the hearsay rule.

If this evidence was hearsay, we conclude it was harmless error to admit it. The jury had before it direct evidence that Ms. Lile had uttered the defamatory statements to Mr. Stockard and others, and that was the theory of the appellee's case. The testimony identifying Ms. Lile as a person who was at the Kempner's Store added nothing. Ms. George's deposition is indefinite as to when Ms. Lile was there. It does not say "outside" whose office she sat.

Although it might be said that this evidence was calculated to prove Ms. Lile was in a position to have uttered the defamatory words at a time vaguely close to the incident Ms. George observed when Mr. Stockard told Mr. Kempner he had received derogatory information about the appellee, we cannot say there is any chance the verdict in this case was to any degree based on that evidence as opposed to the direct testimony of Freda Hendricks.

### 2. *Privilege*

The appellee's complaint contained a count alleging

liability of the appellant for her statements to a prosecuting attorney which led to her 1975 arrest. The appellant moved to strike that count on the ground that statements made to a prosecutor in connection with reporting a crime are privileged because they are part of "judicial proceedings." Neither the appellant's abstract nor the record, as far as we can determine, shows the specific action taken by the court on the motion. However, the court's instructions make it clear the only allegation to be considered by the jury was Ms. Lile's alleged statement to "an employee of Kempner's."

The appellant contends evidence of the 1975 arrest of the appellee should not have been admitted. The record shows the appellee testified she received two bracelets and a clock as gifts from the appellant. Just after that testimony was received, the direct examination of the appellee continued as follows:

Q. Did you subsequently get arrested?

A. Yes, I did.

Q. What was the charge.

MR. MADDEN [Defendant's Counsel]:
Objection, your Honor, he is talking about some other court proceedings.

THE COURT:
Will you gentlemen approach the bench?
(Out of hearing of jury)

THE COURT:
Not for the purpose of showing malice or for the purpose of showing any wrongdoing in Mrs. Lile having the woman arrested, but simply for the purpose of disproving the statement that Mrs. Lile has alleged to have made that she was a thief, you may proceed.

MR. LEWIS [Plaintiff's counsel]:
I would also like it admitted for the purpose of

proving malice, your Honor.

THE COURT:
Well, whatever we call it doesn't make it any difference to the jury, does it?

MR. LEWIS:
I don't suppose.

THE COURT:
Okay, I am going to rule it out for that purpose right now anyhow. I think, very probably, if Mrs. Lile made these statements, they, of themselves, would be adequate to show malice. But anyhow, I am going to let you go ahead.)

Q. What were you accused of doing in that charge?

A. Possession of stolen property.

Q. Was that a felony charge?

A. Yes, it was.

Q. What was it that you were accused of having?

A. Clocks, jewelry, I don't know what all she accused me of having.

Q. Do you recall what jewelry was discussed at that trial?

A. The two costume jewelry bracelets that she had given me.

Q. And the clock.

A. And the clock which I never removed from her house.

Q. Do you recall how that litigation came out?

A. Yes, Judge Cole, in that court, dismissed it at that

time pending for one year, which after one year, he dismissed it.

The objection did not mention privilege. No statement of what Ms. Lile allegedly told the prosecutor was admitted, although reading between the lines might reveal the appellee implied statements made by Ms. Lile when the appellee said "I don't know what all she accused me of having." Even if a statement of what Ms. Lile said had been admitted, the privilege which may apply to liability for the statement is not an evidentiary privilege. See, 8 Wigmore, *Evidence,* § 2363 (4) (1961). Thus, we find no error on that point.

### 3. *Excessive Damages*

On direct examination the appellee gave the following testimony:

> Q. Were the Kempner's people pleased with that commercial?
>
> A. Yes, they were.
>
> Q. Were you, after the conclusion and making of that commercial, offered or told that you would get subsequent spots for Kempner's?
>
> A. Yes, Lynn Kempner, I saw him out in public one night and he told me that the commercial went well.
>
> MR. MADDEN:
> Objection.
>
> THE COURT:
> I think the objection to what he told her would be valid, she may testify that she was promised and she didn't get it.
>
> A. Mr. Kempner told me. . .
>
> Q. Were you promised future spots?

A.   Yes, I was promised.

This testimony as to what the appellee was "promised" was hearsay. We cannot understand the distinction the trial court made between that which the appellee was "told" and that which she was "promised."

The appellee testified as to how she had given up her modeling career because of her embarrassment and her fear of going into stores where she might be employed, but the only evidence of a direct loss of income resulting from the alleged defamation was the hearsay conversation with Lynn Kempner. Thus, we find the error in admitting that evidence was prejudicial. As the prejudice goes only to the extent of the appellee's actual financial loss due to the alleged defamation, however, and not to the question of liability, we need not reverse the entire judgment.

The appellant's final point is that the damages are generally excessive, especially in view of the lack of evidence of any financial loss to the appellee. We agree there is little evidence of direct financial loss to the appellee, especially in view of our rejection of the testimony about "future spots."

We recognize compensatory damages in defamation cases need not be based on proof of financial loss. *Taylor* v. *Gumpert,* 96 Ark. 354, 131 S.W. 968 (1910). See also, Prosser, *Torts*, pp. 754 *et seq.*, (4th ed. 1971). However, there is another serious problem with the damages portion of this judgment. Although the instructions to the jurors and the nature of the form of their verdict were not specifically made issues on appeal, the appellant does argue the damages were generally excessive. In attempting to evaluate this point, we must look to the instructions and the jury's response to them.

The court instructed the jury on damages as follows:

## COURT'S INSTRUCTION NO. A

"Plaintiff claims damages from the defendant and has the burden of proving the following essential propositions:

. . . .

Third, if the plaintiff has proven the foregoing element, [the false statement to a Kempner's employee] she is entitled to recover general damages.

Fourth, in addition to general damages, plaintiff is entitled to receive compensatory damages, that are proven by a preponderance of the evidence, such as embarrassment and mental anguish.

. . . ."

## PLAINTIFF'S REQUESTED INSTRUCTION 7A

### AMENDED

"By general damages, I mean that even if plaintiff proves no actual damages, she is entitled to reasonable damages if the words accuse her of a crime or are of the type likely to injure a person in a profession or trade, damage to reputation from such words is presumed."

### (AMI 2217)

"In addition to compensatory damages for any actual loss that plaintiff may have sustained, she also asks for punitive damages. . . ."

Given these instructions, we cannot tell if it was the duty of the jury to determine actual loss to the plaintiff as "compenatory damages" and the kind of presumed damages attendant upon loss of or injury to reputation as "general damages," or vice versa. We cannot say what the jury intended when it awarded $30,000 in "compensatory damages" and $14 as "general damages."

Although the appellee showed a $12 medical expense, we can find no admissible evidence of "actual loss" suffered by the appellee other than this minor one. The instructions were very confusing, and although we might surmise the jurors' intent, we should not.

Given this situation, we can affirm the award of $14 "general damages" and $20,000 punitive damages. We cannot, however, approve the $30,000 "compensatory damages," as we do not know for certain whether the jury might have meant it to have been for demonstrated losses to the appellee as the last of the partially quoted instructions seems to require. In view of our rejection of the evidence of promise of future modeling contracts, we can find no evidence of actual loss, other than the $12 medical expense.

Although we could simply modify the judgment and affirm it, *Coca Cola Bottling Co. of Southwest Ark.* v. *Carter,* 202 Ark. 1026, 154 S.W. 2d 824 (1942), it will be fairer to offer the appellee an opportunity to remit $30,000 of the judgment or submit to a new trial. *Chicago, R. I. & P. Ry. Co.* v. *Batsel,* 100 Ark. 526, 140 S.W. 746 (1911).

The judgment will be affirmed if within seventeen calendar days from the date of this decision the appellee enters a remittitur of $30,000; otherwise the case is reversed and remanded for new trial.

HAYS and PENIX, JJ., dissent.

M. STEELE HAYS, Judge, dissenting. I would affirm this case on appeal as I do not believe that we are justified in effectively setting aside the jury's verdict for compensatory damages (albeit by way of remittitur) on a point not raised nor argued by either side on appeal. The point urged on appeal with respect to the verdict is that the damages are excessive, not that the instructions were improper. The majority opinion ignores our own rule, frequently applied, that the instructions must be abstracted, in order to be considered on appeal, and circumvents the rule that defamation of the present sort need not be dependent on specific evidence of pecuniary loss. The reasoning behind this cardinal principle of libel and slander is that some types of defamation are so clearly inimical to character, reputation and regard of the person defamed that injury to that person's ability to earn a livelihood is presumed. Here there was substantial evidence the defamatory remarks not only would have such effect, but that loss of employment by the party offended was clearly in-

tended by the appellant. Indeed, there was testimony the publication of the slander was not just at random, but was specifically repeated to persons employing the plaintiff for the avowed purpose of disrupting that relationship.

Professor Prosser defines four categories of slander which do not require proof of damages, two of which clearly cover the slander before us:

> . . . courts very early established certain specific exception: the imputation of crime, of a loathsome disease, and those affecting the plaintiff in his business, trade, profession, office or calling — which required no proof of damage. The exact origin of these exceptions is in some doubt, but probably it was nothing more unusual than a recognition that by their nature such words were especially likely to cause pecuniary, or "temporal" rather than "spiritual" loss. Modern statutes and decisions have added a fourth catetory, the imputation of unchastity to a woman. For these four kinds of slander, no proof of any actual harm to reputation or any other damage is required for the recovery of either nominal or substantial damages. *Otherwise stated, proof of the defamation itself is considered to establish the existence of some damages*, and the jury are permitted, without other evidence, to estimate their amount. Prosser, Law of Torts, 3d Ed. Page 772, Section 107.

I find no error in the record that would justify disturbing the verdict returned in this case.

I am authorized to state that Judge Penix joins in this dissent.