WASP OIL, INC. and John F. BROWN *v.*
ARKANSAS OIL AND GAS, INC., Art CROWELL,
Connie CROWELL, TEXAS OIL AND GAS CORP.,
and Dale S. BRADEN

83-93                                          658 S.W.2d 397

Supreme Court of Arkansas
Opinion delivered October 17, 1983

422

*Warner & Smith,* for appellants.

*Laws & Swain, P.A.,* by: *Bruce Wolitarsky* and *Tom Donovan,* for appellees.

ROBERT H. DUDLEY, Justice. This case began as a simple quiet title action but, before completion, constituted a multi-party action involving not only the quiet title action but also a defamation action arising out of the disputed title. In accordance with one of the tenets of the Arkansas Rules of Civil Procedure, the trial judge allowed a third party plaintiff to enter and a third party defendant to be brought in and then tried the related cases at one time. We affirm on all issues except for the proof of damages for defamation. Jurisdiction is before this Court as the case presents issues involving oil, gas and mineral rights, Rule 29 (1) (n), and because it involves a question in the law of torts, Rule 29 (1) (o).

Wasp Oil, Inc., the original plaintiff, and now one of the appellants, contends that the trial court erred in refusing to quiet its title to an oil and gas lease. On February 26, 1981, the landowners, the Crowells, executed an oil and gas lease to Wasp Oil. Unfortunately, at that time, Wasp Oil did not file the lease for record. On April 10, 1981, the landowners executed another oil and gas lease involving the same land but this lease was to Arkansas Oil and Gas, Inc. On that same day, April 10, 1981, Arkansas Oil assigned its lease to Texas Oil and Gas Corporation. On April 23, 1981, Arkansas Oil filed its lease for record. The practice of the recorder was to place leases in the record book by the use of a photocopy system. There is substantial evidence that on April 23 the recorder photocopied only the front and not the back of the lease to Arkansas Oil. The acknowledgement is on the back of the page and therefore was not originally photocopied.

On May 20, 1981, Arkansas Oil's assignment to Texas Oil was recorded. It was not until June 1, 1981, that the plaintiff, Wasp Oil, filed for record its lease which was, in fact, the first one executed.

Wasp Oil contends that the Arkansas Oil lease should be removed as a cloud on its title because at the time Arkansas Oil took its lease, its chief executive officer, Dale Braden, had actual knowledge of Wasp Oil's original lease. Although there is substantial evidence that neither Arkansas Oil nor Dale Braden had actual knowledge of the Wasp Oil lease, the argument is moot because the evidence clearly establishes that Texas Oil was an innocent purchaser without notice of the original unrecorded lease. An innocent purchaser is not chargeable with constructive notice of an unrecorded instrument. *Moore* v. *Morris,* 118 Ark. 516, 177 S.W. 6 (1915). Of course, one who purchases with actual knowledge of a prior unrecorded lease, or with information which would naturally suggest inquiry and lead to such knowledge, is not an innocent purchaser. *Love* v. *Bryson,* 57 Ark. 589, 22 S.W. 341 (1893). Here there is no proof that Texas Oil had any information which would suggest an inquiry.

Appellant Wasp Oil next contends that Dale Braden's alleged actual knowledge should be imputed to Texas Oil on the basis that Braden was the agent of Texas Oil. We quickly dispose of the contention as the proof is unequivocal that Braden was an independent broker dealing in oil and gas leases.

Appellant Wasp Oil argues that the chancellor erred in refusing to strike the Arkansas Oil lease from the record book since the lease, as originally photocopied, did not contain an acknowledgement. Obviously, if Arkansas Oil's lease is struck from the record book then Wasp Oil's lease would advance to the status of the first recorded lease. We reject that argument. The lease to Arkansas Oil was properly acknowledged, and because it was properly acknowledged, it was subject to recording. Ark. Stat. Ann. § 16-101 (Repl. 1979). It was the duty of the recorder to properly record it. Ark. Stat. Ann. § 16-105 (Repl. 1979). The fact that the

recorder failed to record the acknowledgement is not a valid reason to strike the instrument from the record book. When a properly executed and acknowledged lease is filed for recording, it protects the parties to the lease against intervening rights of third parties even though it is not properly recorded. Ark. Stat. Ann. § 16-114 (Repl. 1979); *Rowland* v. *Griffin,* 179 Ark. 421, 16 S.W.2d 457 (1929).

The chancellor's rulings with regard to the petition to quiet title are affirmed.

A counterclaim and third party complaints alleging defamation were also filed. Appellant John F. Brown, the third party defendant below, contends that the trial court erred in refusing to dismiss him from the third party complaints for defamation. He advances the proposition that a defamation action may be brought only in the county in which the defendant, or one of several defendants, resides or is summoned. Ark. Stat. Ann. § 27-613 (Repl. 1979). *See Robinson* v. *Missouri Pacific Transportation Co.,* 218 Ark. 390, 236 S.W.2d 575 (1951). His argument seems enhanced, at first glance, by the stricture of the Rules of Civil Procedure that the rules do not extend jurisdiction or venue. ARCP Rule 82. Appellant contends that he was a resident of Sebastian County and could not properly be made to answer a defamation action pending in Yell County. Again, we affirm the trial court.

The procedure can be conceptualized in three tiers. The first tier is the complaint of plaintiff Wasp Oil, Inc., against Arkansas Oil and Gas, Inc., the landowners named Crowell, and Texas Oil and Gas Corporation. The complaint to quiet title was local in nature and Wasp properly filed the action in the county where the land was located. Ark. Stat. Ann. § 27-601 (Repl. 1979). *See Fidelity Mortgage Co.* v. *Evans,* 168 Ark. 459, 270 S.W. 624 (1925).

The second tier is the counterclaim and third party complaint for defamation filed by Arkansas Oil against Wasp Oil and its president, John F. Brown. Both Wasp and Brown reside in Sebastian County. The alleged defamation arises directly from the leasing transactions and a logical relationship exists between the complaint, the counterclaim

and the third party complaint. Much of the evidence is applicable to both actions. The trial judge was correct in holding the counterclaim was compulsory. Venue of the counterclaim against Wasp was fixed by Wasp's filing of the original suit. ARCP Rule 13 (a). The venue statute, Ark. Stat. Ann. § 27-613 (Repl. 1979), does not purport to fix venue for a compulsory counterclaim. *See B-W Acceptance Corp.* v. *Colvin,* 252 Ark. 306, 478 S.W.2d 755 (1972) (involving a comparable earlier statute). Arkansas Oil, in the same pleading and stating the same cause of action, made John F. Brown, the president of Wasp Oil, a party to the proceeding. Such joinder is authorized under ARCP Rule 13 (g) and ARCP Rule 20 (a). The issue becomes whether Wasp's waiver of venue as to the counterclaim by filing the original action will carry over to cover third parties joined to the counterclaim. This requires an examination of ARCP Rule 13 (g).

> Joinder of Additional Parties. Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20.

ARCP Rule 13 (g) contemplates joinder under either Rule 19 or 20. The notes following Rule 19 state that Ark. Stat. Ann. § 27-615 (Repl. 1962) remains unaffected by the rules. However, since the counterclaim was compulsory, the principle of ancillary jurisdiction extends to the additional party. Further, the provision in Rule 13 (a) which excludes from its definition of compulsory counterclaim those which require for the adjudication "the presence of third parties of whom the court cannot acquire jurisdiction" does not compel a different result. This restriction is limited to cases of inability to obtain personal jurisdiction over the additional defendant and is not a matter of venue. Basic considerations of fairness dictate that the potential parties cannot be forced to enter litigation without service of process upon them and the compulsory counterclaim rule is limited to permit this principle. *See United Artists* v. *Masterpiece Productions,* 221 F.2d 213 (2d Cir. 1955).

The third tier is the intervention and third party complaint filed by Dale Braden, the president of Arkansas

Oil, against Wasp Oil and its president, John Brown. His intervention is permissive. ARCP Rule 24 (b). The intervention was a matter of discretion with the trial judge and the judge did not abuse that discretion. The third party complaint was for relief jointly with Arkansas Oil. It involves the same cause of action, requires most of the same proof, and is interwoven with the counterclaim filed by Arkansas Oil. Braden's third party complaint and Arkansas Oil's claim have common questions of law and fact. His joinder as a third party plaintiff was permissive. ARCP Rule 20 (a). Jurisprudentially, since the jurisdiction of the court over a counterclaim against the plaintiff is not referable to the location or residence of the plaintiff, but rather to its cognizance of the "transaction or occurrence," there is no basis on which to differentiate between the counterclaim and third persons interested in the transaction or occurrence. The Second Circuit Court of Appeals, with Learned Hand sitting on the panel, termed this "ancillary jurisdiction" and reasoned that ancillary jurisdiction does not require independent grounds for either jurisdiction or venue. *Lesnik* v. *Public Industrial Co.*, 144 F.2d 968 (2nd Cir. 1944); *contra, King* v. *Shepherd*, 26 F. Supp. 357 (W.D. Ark. 1938). Of course, if the third party complaint was not a bona fide part of the original transaction or occurrence the result would be different.

The trial court correctly refused to dismiss appellant John F. Brown from the third party complaint.

The appellants' next point is: "The trial court erred in finding the content of the letter of Wasp Oil, Inc. to be libelous as to Dale S. Braden." The argument begins: "The appellants submit that the third party plaintiff, Dale S. Braden, did not show that the recipients of this letter did or reasonably could have understood the statement to refer to Dale S. Braden." As can be seen from the above quotations, the standard of defamation by a non-media speaker is not questioned. *See KARK-TV* v. *Simon & Smith*, 280 Ark. 228, 656 S.W.2d 702 (1983); Smolla, *Intertwining the Constitution and the Common Law: Evolving Doctrines of Defamation in Arkansas,* 1983 Arkansas Law Notes 49. The sole question is whether the publication referred to Dale Braden.

The publication in this case is by a letter to the American Bar Association, to the Arkansas Bar Association and to the parties. Dale S. Braden is a lawyer and it is obvious that one purpose of the letter was to complain about him to the professional legal associations. The names and addresses at the top of the letter set out that Dale Braden is president of Arkansas Oil. In addition, the letter specifically refers to Dale Braden. The last paragraphs are as follows:

> The conversation, in which Arkansas Oil and Gas Company talked Mr. Crowell into executing this Oil and Gas Lease to them, I believe would constitute fraud, and it is certainly fraud on Mr. Crowell's part, after having accepted my money, some 13 days later accepting money again.

> This letter will serve, as my demand to Texas Oil & Gas Corp., and Arkansas Oil and Gas Company, Dale Braden, as President, to immediately and promptly release any leasehold interest that they may claim to this Oil and Gas Lease executed by Art Crowell, et ux to Arkansas Oil and Gas dated April 10, 1981, for a term of five (5) years, and your failure to do so will result in a lawsuit, and I hope, criminal prosecution of everyone involved.

> It is my desire that this is handled immediately for such acts as this is what has discouraged me, and others, the last few years in the oil business. I realize it is a very competitive business, but out and out lying and stealing, I just cannot condone in any way. For all of those who were involved in this little conspiracy to fraud, I want you to know my utter disgust and contempt with you.

To determine if the content of a letter is defamatory about a particular party, the entire letter must be construed. See *Skaggs* v. *Johnson,* 105 Ark. 254, 150 S.W. 1036 (1912). We have no hesitancy, when examining the entire letter, in affirming the ruling of the chancellor that the letter referred to Dale Braden. Similarly without merit is appellant's

argument that the letter was not intended as a statement of fact but merely as a comment or opinion.

Appellants' final point is that Dale Braden's proof of damages fails to sustain the award of $59,500 in compensatory damages and $50,000 in punitive damages. The argument has merit.

First, we summarily dispose of one of appellants' arguments.

During oral argument the appellant pointed out that Braden filed his defamation suit in chancery court as third party plaintiff when he could have proceeded initially in circuit court. Then, during oral argument, he assigned as error our rule that one who elects to proceed in equity when he already has an adequate remedy at law, as did Braden, must be held, as a matter of law, to have waived punitive damages. *See Stolz* v. *Franklin,* 258 Ark. 999, 531 S.W.2d 1 (1975). We do not consider the argument because, as counsel forthrightly stated, the argument was not presented to the trial court. Assignments of error may not be raised for the first time on appeal. *Ferguson* v. *City of Mountain Pine,* 278 Ark. 575, 647 S.W.2d 460 (1983).

On appeal, in reviewing the sufficiency of the evidence to support a verdict by a trial judge, we consider the evidence most favorable to the appellee and affirm unless the judge's decision is clearly erroneous. ARCP Rule 52; *Bachman* v. *Bachman,* 274 Ark. 23, 621 S.W.2d 701 (1981). Using that test, there is sufficient evidence to support the finding that actual malice caused the publication of the defamatory letter. Consequently, the proof submitted on the issue of liability was sufficient to support an award for all damages caused by the defamatory publication as well as all appropriate punitive damages. *See KARK-TV* v. *Simon & Smith,* 280 Ark. 228, 656 S.W.2d 702 (1983).

Our general rule is that damages may not be allowed "where they are speculative, resting only upon conjectural evidence or the opinions of the parties or witnesses," *Eagle Properties, Inc.* v. *West & Co. of Louisiana,* 242 Ark. 184, 412

S.W.2d 605 (1967). That rule is a good sense rule and is so applied by this court. There are instances where damages simply cannot be proven with exactness. In that event the rule becomes "when the cause and existence of damages have been established by the evidence, recovery will not be denied merely because the damages cannot be determined with exactness." *See Crow* v. *Russell,* 226 Ark. 121, 289 S.W.2d 195 (1956).

Here, Dale Braden, the third party plaintiff, did not prove, or even attempt to prove, any of those damages which are not required to be proven with exactness, such as mental anguish as a result of the defamation. *See KARK-TV* v. *Simon, supra,* and discussion in *Gobin* v. *Globe Publishing Co.,* 531 P.2d 76 (Kan. 1975). Instead, his evidence on the issue of damages was limited to his loss of income.

Dale Braden, on direct examination, testified that he had the option with Texas Oil of earning either $5 per acre plus a one-sixteenth overriding mineral interest or else a total of $25 per acre. He stated that in 1980 and 1981 he usually gave up the $20 per acre in order to earn the override. He then testified that his overriding one-sixteenth interest in producing wells on 845.7 acres had a value of $334,685.70. However, that figure was not related, in any manner, to the acreage he leased to Texas Oil after the defamatory letter. He gave no testimony of the value of projected value or even a supposition of value of overriding interests acquired after the letter in order for damages to be assessed.

The only detailed testimony of Dale Braden which goes to an exact loss of income is as follows:

Q. Are you claiming to have lost income as a result of this letter of June 5th, 1981?
A. Yes, sir, I am.
Q. Have you reduced that to a specific figure?
A. Well, sir, I've attempted to do so using Texas Oil and Gas Assignments, only.
Q. Okay. Let's take this step at a time.
A. Um huh.

Q. You have attempted to do something with Texas Oil and Gas Assignments, only?

A. That's true.

Q. Tell me what your process was?

A. I took the total number of net mineral acres that I had assigned to them times five dollars an acre and arrived at a figure up thru June the 9th of 1981.

Q. Did you subtract your cost for acquiring these lease acres from that figure?

A. No, sir, I did not, but neither did I subtract the cost after that period, either. The costs are almost impossible to ascertain.

Q. I understand that Gross Profits are not evidence of loss, that is gross profits, isn't it?

A. Yes, sir, it is.

The computations discussed were never offered into evidence. No income tax returns, books of account or projection of loss of income was offered.

Braden did testify that he kept an extensive record of his transactions with Texas Oil and that he and his company, Arkansas Oil, together had assigned 5950.92 acres of mineral interest to Texas Oil from February, 1980 to the defamatory letter of June 9, 1981. He testified that a comparable period of time had elapsed from the date of the letter, June 9, 1981, until the date of the trial, November 16, 1982, and during the latter period he and his company had assigned only 762.21 acres of mineral interests to Texas Oil, or a net leasing loss of 5188.71 mineral acres. This acreage lease loss, 5188.71, multiplied by the $5 per acre loss testified to by Braden, equals a gross loss of income of $25,943.55, far short of the $59,500 damages awarded by the trial judge.

Proof of the amount of damages was not the only speculative matter. Proof of the cause of the loss of income was also conjectural. Charles Still, a representative of Texas Oil, testified that his company substantially decreased its business with Dale Braden because of seven factors: (1) the letter, (2) this lawsuit, (3) title problems, (4) lack of available leases in Pope County, (5) no desire for leases in Yell County, (6) a company reduction in the use of independent brokers

and (7) personality conflicts. His testimony was undisputed. He did not testify which factors were major causes or which were minor causes. It may well be that most of the decrease was due to title problems or to a reduction in the use of independent brokers. The trial court had no way of knowing.

Appellants are liable only for the loss of income caused by the defamatory publication. They are not liable for the loss of income due to this lawsuit, title problems, lack of available leases, no market for leases in Yell County, reduction in the use of independent brokers or personality conflicts.

The amount of the loss of income was not established with any degree of exactness, but even if the trial court could have determined that figure, it could not determine what part of the loss of income was caused solely by the defamatory letter. Yet, that was done and it was done without a finding of facts. Even appellee, Dale Braden, in his brief admits, "It is not clear how the learned chancellor arrived at the figure of $59,500." The award of $59,500 as loss of income due solely to the defamatory letter is based upon sheer speculation. We reverse the award of compensatory damages.

The award of punitive damages cannot be affirmed without an award of compensatory damages. *Winkle* v. *Grand National Bank*, 267 Ark. 123, 601 S.W.2d 559 (1980). Consequently, the court must also be reversed on that issue.

The usual practice is to end a case with only one trial, but that is not imperative, and this court has the power, in furtherance of justice, to remand any case to equity for further proceedings, including hearing additional evidence. *Ferguson* v. *Greene*, 266 Ark. 556, 587 S.W.2d 18 (1979). In this case Braden has obviously suffered some damage as a result of the defamation and it would be unjust to reverse and dismiss. Therefore we remand for further proceedings.

Affirmed in part. Reversed and remanded in part.

ADKISSON, C.J., and HICKMAN and HAYS, JJ., dissent.

STEELE HAYS, Justice, concurring in part, dissenting in part. I agree entirely with the majority opinion down to the final point, i.e., that Braden's proof of damages fails to sustain the awards of compensatory and punitive damages.

The words written about Braden and his company were actionable *per se* and, hence, whether Braden's proof of pecuniary loss sustained the amount awarded by the trial court is beside the point. In his pleading Braden prayed for the recovery of general damages and the law in this state and in many states, is that libel that is actionable *per se* supports a recovery of general damages and is not dependent on proof of special damages. See *Dun and Bradstreet, Inc.* v. *Robinson*, 233 Ark. 168, 345 S.W.2d 34 (1961); *Taylor* v. *Gumpert*, 96 Ark. 354, 131 S.W. 968 (1910); *Lile* v. *Matthews*, 268 Ark. 980, 598 S.W.2d 755 (Ark. App. 1980); Prosser on Torts, p. 754 [4th ed.].

In *Dun and Bradstreet* v. *Robinson* we upheld an award of general damages of $30,000 where the defendant innocently but inaccurately published a report to its subscribers that the plaintiff had discontinued business operations. In contrast to the libel in *Dun and Bradstreet*, we have here a deliberate and calculated attempt to defame and discredit Braden and his company by the appellants. Appellants made a veiled but unmistakable reference to Braden and Arkansas Oil and Gas Company as having practiced "out and out lying and stealing," as well as conspiracy to defraud. Appellants' letter was then circulated to several other parties as well as to the American and Arkansas Bar Associations. Finally, and to make certain that no one was overlooked, a copy was spread upon the records of the Recorder of Yell County, Arkansas.

It should be noted that in *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323 (1974), the Supreme Court excised from the common law of defamation what it termed "an oddity of tort law," the practice of allowing recovery of purportedly compensatory damages without evidence of actual loss, recognizing that under traditional rules pertaining to

actions for libel, the existence of injury is presumed from the fact of publication. The court concluded its analysis of First Amendment protections of a free press by requiring that state remedies restrict defamation plaintiffs who do not prove the falsity or reckless disregard for the truth to compensation for *actual injury. Gertz, supra* at p. 349. Here, while it might well be argued that appellants' libel brings the case within the stated exception, that need not engage us, as it is plain that the *Gertz* opinion applies to defamation suits against *newspaper publishers* and *broadcasters,* the so-called "media-defendants." The decision begins with the declaration, "The principal issue in this case is whether a newspaper or broadcaster that publishes defamatory falsehoods about an individual who is neither a public official nor a public figure may claim a constitutional privilege against liability for injury inflicted by those statements.", *Gertz,* p. 332, and concludes with:

> We hold that, so long as they do not impose liability without fault, the states may define for themselves the appropriate standard of liability for a *publisher or broadcaster* of defamatory falsehoods injurious to a private individual. (*Gertz,* at p. 347) (My emphasis.)

A similar interpretation of the *Gertz* decision, though evident enough from the opinion itself, has been reached in *Schomer* v. *Smidt,* 113 Cal. App. 3d 828, 170 Cal. Rptr. 662 (1980). See also, 25 UCLA L. Rev. 915.

I would affirm the award of compensatory and punitive damages.

ADKISSON, C.J., joins in this dissent.