**GREEN MACHINE CORPORATION and Edward A. Zuzelo, Plaintiffs/Counterclaim Defendants,**

v.

**ALLEN ENGINEERING CORPORATION, Defendant/Counterclaim Plaintiff,**

v.

**Marilynn C. Zuzelo, Additional Counterclaim Defendant.**

**No. CIV. A. 99–2339.**

United States District Court, E.D. Pennsylvania.

May 31, 2001.

Angela Saccomandi, Justin S. Walker, Joseph E. Vaughn, Siana and Vaughn, Exton, PA, for plaintiffs.

Stephanie Richman, Margaret S. Woodruff, Schnader, Harrison Segal & Lewis, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

The matter before me requires that I determine the preclusive effect on the present action, if any, of a prior state court judgment by the Arkansas Circuit Court. On January 25, 1996, plaintiff/counterclaim defendant Green Machine Corporation ("GMC"), initiated a state court action against defendant/counterclaim plaintiff Allen Engineering Corporation ("AEC") in the Circuit Court of Greene County, Arkansas ("the Arkansas action").[1] AEC answered GMC's Arkansas complaint and asserted counterclaims against GMC. The Arkansas Circuit Court ultimately dismissed GMC's complaint without prejudice and entered a final judgment in favor of AEC on its counterclaims. On May 6, 1999, GMC, joined by Edward Zuzelo, president of GMC, initiated this federal action asserting patent infringement under 35 U.S.C. § 271[2] and various other state law claims. AEC now moves this court to limit GMC's claims under the doctrines of res judicata and collateral estoppel.

## SUMMARY OF FACTS

GMC manufactures saws, saw blades, and arbors for cutting concrete. Edward Zuzelo is the President of GMC. GMC

1. Neither Edward A. Zuzelo nor Marilyn C. Zuzelo were parties to the Arkansas action.

2. The patent infringement claim is brought only by Zuzelo. Zuzelo claims that AEC has

been and continues to infringe on a patent entitled "Saw Blade and Mounting Means for the Same" (the '845 Patent), which was legally issued to Zuzelo on December 26, 1995.

was created in 1994 when Cardinal Industries, Inc. ("Cardinal") divided into two separate and distinct companies. AEC sells saws and blades for cutting concrete. From GMC's inception in 1994 through October, 1995, AEC sold GMC's saws, blades and arbors.[3] By contract, GMC agreed to indemnify AEC for "any expenses or liability from any suit for patent infringement of any Chiuminatta patents as a result of its sale of [GMC's products.]" Complaint, Exhibit D. Edward A. Zuzelo and Marilyn C. Zuzelo both signed a personal guarantee to the indemnification agreement.

In July 1995, Chiuminatta Concrete Concepts, Inc., Edward Chiuminatta, and Alan Chiuminatta (collectively "Chiuminatta") sued Cardinal, GMC, and AEC for patent infringement in the United States District Court for the Central District of California, Western Division. AEC cross filed for indemnification by GMC pursuant to the indemnification agreement. GMC maintained that its contractual obligations to indemnify AEC had not matured, because AEC had not purchased the requisite number of saws from GMC.[4] In October, 1995, the business relationship between AEC and GMC came to an end. In December of 1995, AEC entered into a consent judgement with Chiuminatta in which AEC admitted infringement of the Chiuminatta patents by the GMC saw. AEC paid Chiuminatta $40,000.00 in judgement.

On January 25, 1996, GMC commenced the Arkansas action against AEC alleging that AEC owes GMC "$18,747.03 for goods, wares, merchandise and/or services rendered purchased by defendant and delivered to the defendant at their special request." Defendant's Motion, Exhibit A ("Arkansas Complaint"). AEC answered the complaint and asserted counterclaims against GMC:

"for the sum of $72,213.09 for credits for defective goods, wares, merchandise and/or services provided by plaintiff to defendant and for certain sums owed to the plaintiff by defendant under the terms of an indemnification agreement."

Defendant's Motion, Exhibit B ("Counterclaim"). GMC filed an Answer to AEC's counterclaim denying all material allegations.

Sixteen months later, on May 26, 1999, AEC amended its counterclaim in the Arkansas action. The Amended Counterclaim more fully set forth AEC's claim for indemnification with respect to the sums paid by AEC to Chiuminatta and AEC's allegation that GMC breached its warranty of title and warranty against infringement. The Amended Counterclaim was premised upon the Chiuminatta action and the written indemnification agreement between the parties. AEC alleged that:

- "The plaintiff, [GMC] sold the defendant saws totaling $13,861.00.

- On January 13, 1995, [AEC] and [GMC] entered into an Indemnification

3. GMC alleges that AEC agreed to be the exclusive distributor of GMC's saws, blades, and arbors. *See* Complaint, ¶¶ 8–11. AEC denies that it was obligated to GMC as exclusive distributor. *See* Allen Engineering Corporation's Motion to Limit Claims Under the Doctrines of Res Judicata and Collateral Estoppel ("Defendant's Motion") at 12 n. 6.

4. The third paragraph of the indemnification agreement states:

"It is understood that AEC must still be an "active" customer of [GMC] on the docket filing date of the patent suit. Active meaning that at least 100 saws were purchased by [AEC] with one year prior to the docket date of a lawsuit."

Complaint, Ex. D ("Indemnification Agreement").

Agreement ... The agreement was provided by [GMC] to [AEC] in consideration for [AEC] selling and distributing the saws manufactured by [GMC]. The plaintiff warranted in said indemnification agreement to the defendant that the saws did not infringe upon the patent of a third party, namely [Chiuminatta].

- Upon the attempts of [AEC] to distribute said saws, Chiuminatta initiated a federal lawsuit naming [AEC] as a defendant.

- As a result, the defendant in this action incurred $18,352.09 in attorney's fees from defending the patent infringement action.

- The defendant also paid a $40,000.00 judgment to Chiuminatta.

- As the saws in question did in fact infringe on the patent of Chiuminatta, they were of no use to [AEC] ..."

- Separate and apart from the indemnification agreement, [GMC] warranted that the products would be delivered free of the rightful claim of any third person by way of infringement or the like."

- Since Green Machine supplied products which infringe any of the Chiuminatta patents asserted against Allen Engineering in the underlying federal action, then Green Machine has breached its warranty of title and warranty against infringement."

Defendant's Motion, Exhibit C ("Amended Counterclaim"). Based on these allegations, AEC sought judgment against GMC in the amount of $72,213.09 plus interest and costs. GMC filed a reply to the Amended Counterclaim denying all material allegations.

On May 6, 1999, GMC initiated this federal action against AEC. In the complaint, GMC alleges that:

- "Since in or before February 1994, through and including October 1995, GMC and AEC consistently engaged in an ongoing commercial relationship in which AEC performed as exclusive distributor of Saws, Blades and Arbors for GMC (the "Commercial Relationship") ...

- The course of performance, course of dealing, and usage of trade were ratified by the parties in a letter of understanding ("Letter of Understanding"), a proposed agreement ("Proposed Agreement") and an indemnification agreement ("Indemnification Agreement"), all of which were drafted by GMC's former counsel John W. Logan, Jr. ("Logan") in or around the winter/spring of 1993–94 (hereinafter collectively referred to as the "Agreement"). AEC neither made nor expressed any objection to the Agreement ...

- As GMC's exclusive distributor, AEC was entrusted with confidential information regarding the creation and design of the Saws, including the GM–150 (the "Confidential Information") ...

- The Confidential Information is a trade secret ("Trade Secret")

- It is believed and therefore averred that despite GMC's entrustment of the Confidential Information to AEC, AEC has intentionally and maliciously duplicated the GM–150, all to its own gain and benefit, and to the serious detriment of Zuzelo and GMC ...

- As exclusive distributor for GMC, AEC had a duty to use its best efforts to sell the GMC Saws, Blades and Arbors.

- As exclusive distributor of GMC's Saws, Blades and Arbors, AEC stood in a fiduciary relationship to GMC.

- AEC failed to use its best efforts in the sale of the GMC Saws, Blades and Arbors.

- It is believed and therefore averred that [AEC] resold the Saws, Blades and Arbors at or about three (3) times the cost charged to it by GMC ("Mark-up") . . .

- The commercial relationship came to an end in or around October 1995 due, *inter alia,* to the failure of AEC to pay amounts owed to GMC and AEC's material breaches of the Agreement . . .

Complaint at 3–7. GMC also alleges the Chiuminatta action against the parties set forth above, including an allegation that AEC entered a consent judgment with Chiuminatta in which AEC admitted infringement of Chiuminatta patents by the GMC saw.

The remainder of the Complaint is premised on events that allegedly occurred after the parties terminated their business relationship. GMC alleges that:

- "On or about December 26, 1995, United States Letters Patent No. 5,477,-845, entitled "Saw Blade and Mounting Means for the Same," was duly and legally issued to Zuzelo (the " '845 Patent") . . .

- It is believed and therefore averred that AEC, through its agents, employees and servants, has been and continues to infringe the '845 Patent by manufacturing or inducing others to manufacture, using, selling, and/or offering for sale the Blade and Arbor and/or the equivalent of the Blade and Arbor covered by one or more claims of the '845 Patent . . ."

- "[I]n or around October to December of 1995, the agents, employees, and servants of AEC ("AEC Employees") misrepresented themselves as independent distributors looking for GMC Replacement Parts. At no time relevant thereto did the AEC Employees in anyway identify or represent themselves as working for AEC.

- It is believed and therefore averred that the AEC Employees made fraudulent statements with the intent that GMC would act in response to these statements by selling and shipping to them Replacement Parts.

- In the alternative, it is believed and therefore averred that the AEC Employees made negligent statements which they either knew were false or were without knowledge as to their truth or falsity or were made under circumstances in which they ought to have known of the statements' falsity and with the intent that GMC would act in response to these statements by selling and shipping to them Replacement Parts . . ."

Complaint at 9–10. Based on these allegations, GMC asserts the following claims (1) Breach of Contract; (2) Misappropriation of Trade Secret; (3) Fraudulent Misrepresentation; (4) Negligent Misrepresentation; (5) Breach of Fiduciary Duty; (6) Civil Conspiracy; and (7) Patent Infringement.[5]

On January 24, 2000, the Arkansas Circuit Court entered an order in the Arkansas action dismissing GMC's Complaint "without prejudice" and striking GMC's Answer to AEC's counterclaim as a discovery sanction. *See* Defendant's Motion, Exhibit G. The order stated:

---

**5.** GMC is the sole plaintiff asserting the claims for breach of contract, negligent misrepresentation, fraudulent misrepresentation, breach of fiduciary duty, and civil conspiracy.

The claim for misappropriation of trade secret is brought by both GMC and Edward Zuzelo. The claim for patent infringement is brought solely by Zuzelo.

"1. The court accepts the motion by the plaintiff/counterdefendant, Green Machine Corporation and dismisses its complaint in this cause without prejudice. In order to refile its complaint, the court intends to order the plaintiff/counterdefendant to pay $1,804.00 to the defendant/counterclaimant. This amount is equal to the amount previously ordered by this court to be paid by Green Machine Corporation to Allen Engineering Corporation.

2. Due to Green Machine Cooperation's failure to cooperate in discovery, the court strikes the answer of Green Machine Cooperation to the counterclaim of Allen Engineering Corporation."

*Id.*[6] After this order was issued, GMC attempted to remove the Arkansas action to the Eastern District of Arkansas. The District Court denied the Notice of Removal, remanded the case to the Circuit Court, and sanctioned Green Machine and its counsel for improper removal. On August 29, 2000, the Arkansas Court held a

non-jury assessment of damages trial on AEC's Amended Counterclaim and entered judgment on the counterclaim in favor of AEC.[7] GMC has filed a notice of appeal of this order of judgment with respect to damages.

## DISCUSSION

■ AEC asserts in its motion that the Arkansas judgment on its counterclaim bars all of GMC's claims in this action, except for its patent infringement and civil conspiracy claims.[8] "A federal court applying preclusion principles is bound by the Full Faith and Credit statute, 28 U.S.C. § 1738, and must give a prior state judgment the same effect as would the adjudicating state." *Gregory v. Chehi*, 843 F.2d 111 (3rd Cir.1988). Accordingly, the Arkansas judgment on AEC's counterclaim must be given the same preclusive effect in this action as it would have been given in a subsequent action filed in Arkansas state court.[9]

---

6. GMC asserts in its Memorandum of Law in Opposition to Defendant's Motion ("Plaintiff's Response") that the dollar amount stated in the Arkansas court's order was based on an estimate of discovery costs to be incurred by AEC if GMC were to pursue its claim.

7. Although not relevant to this matter, on September 28, 2000, AEC transferred the Arkansas judgment to the Court of Common Pleas of Montgomery County. GMC is petitioning to open that judgment.

8. AEC acknowledges that GMC's patent infringement claim could not have been brought in the Arkansas action, because this court has exclusive jurisdiction over such claims pursuant to 28 U.S.C. § 1338(a). This statute provides that:

"The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases."

AEC further excludes GMC's civil conspiracy claim from this motion because it is directly related to the patent infringement claim. AEC also asserts that its declaratory judgment and patent misuse counterclaims in this action are responsive to GMC's patent infringement and civil conspiracy claims. *See* Defendant's Motion at 5. Throughout the remainder of this opinion, any reference to "the claims in this action" or "GMC's claims" does not include either GMC's claims for patent infringement and civil conspiracy, or AEC's responsive counterclaims.

9. The doctrine of preclusion has two facts: (1) claim preclusion, and (2) issue preclusion. *See In re Estate of Goston v. Ford Motor Company*, 320 Ark. 699, 898 S.W.2d 471, 473 (1995). AEC does not argue issue preclusion in its motion. Therefore, claim preclusion will be addressed.

Issue preclusion and claim preclusion are sometimes discussed as two facets of res judicata. When I use the word "res judicata" in this opinion, I am referring only to claim preclusion.

The Arkansas Supreme Court has stated that, "res judicata" "bars relitigation of a subsequent suit when (1) the first suit resulted in a judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action which was litigated or could have been litigated but was not; and (5) both suits involve the same parties or their privies." *Swofford v. Stafford*, 295 Ark. 433, 748 S.W.2d 660, 661 (1988) (citations omitted). In this matter, the first suit was the Arkansas action. The principle issue is whether GMC's claims in this action involve the same claim or cause of action which was litigated or could have been litigated in the Arkansas action, but was not.

It is clear from the face of the pleadings that GMC is not bringing the same claim as AEC's previously litigated counterclaim. "Res judicata bars not only the relitigation of claims which were actually litigated in the first suit but also those which could have been litigated. Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies." *Coleman's Serv. Ctr. v. Federal Deposit Ins. Corp.*, 55 Ark. App. 275, 935 S.W.2d 289, 297–98 (1996) (citations omitted). AEC asserts that GMC's claims are res judicata, because they could have been litigated, and, in fact, under Arkansas Rule of Civil Procedure 13(a), were required to be litigated in the Arkansas action as compulsory counterclaims to AEC's counterclaim.

Arkansas Rule of Civil Procedure 13(a) requires parties to state as a counterclaim any claim against any opposing party "that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."[10] A party that fails to present any such claim is barred from raising that claim in a subsequent action. *See In re Estate of Goston*, 320 Ark. 699, 898 S.W.2d 471. "Rule 13(a) is virtually identical to its federal counterpart," Federal Rule of Civil Procedure 13(a), and Arkansas courts have looked to federal application of this rule for guidance. *Id.* at 474. *See also*, Rebecca D. Hattabaugh, *United–Bilt Homes, Inc. v. Sampson: A New Standard for Compulsory Counterclaims?* 48 Ark. L.Rev. 1009, 1013 (1995) ("There is only one difference between the Arkansas rule and its federal counterpart. Arkansas substitutes the word "filing" for the word "serving" which is used in the federal rule"). Accordingly, I will discuss Federal Rule of Civil Procedure 13(a) interchangeably with Arkansas Rule of Civil Procedure 13(a).

Applying Rule 13(a), I must determine whether GMC's claims in the present action were compulsory counterclaims in the Arkansas action, i.e. whether they arose out of the same transaction or occurrence as AEC's adjudicated counterclaim. *See* Ark. R. Civ. Proc. 13(a). The "same transaction or occurrence" test applicable under Rule 13(a) is similar, if not virtually identical to the test for whether "both suits involve the same claim or cause of action" under the doctrine of res judicata. *See, e.g., Golden Host Westchase, Inc. v. First Serv. Corp.*, 29 Ark.App. 107, 778

---

10. Arkansas Rule of Civil Procedure 13(a) states in relevant part:

"A pleading shall state as a counterclaim any claim which, at the time of filing the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

S.W.2d 633 (1989). The Arkansas Supreme Court has defined a compulsory counterclaim under Rule 13(a) as any claim that bears a 'logical relation' to an opposing party's claim. *See Wasp Oil, Inc. v. Arkansas Oil and Gas, Inc. et al.*, 280 Ark. 420, 658 S.W.2d 397, 399 (1983) (holding that the trial court was correct in finding that the counterclaim was compulsory because a "logical relationship exists" between the claims). *See also, Linn v. NationsBank*, 341 Ark. 57, 14 S.W.3d, 500, 504–05 (2000) (holding that claims are barred as compulsory counterclaims to a previously litigated claim under Ark. Rule Civ. Proc. 13(a), because the claims "arose from the same set of circumstances," and "a logical relationship exists"). The majority of federal courts also apply the "logical relationship" test to determine whether a claim is a compulsory counterclaim under Federal Rule of Civil Procedure 13(a). *See* A. Wright and C. Miller § 1410 at 4. The Third Circuit has explained the meaning of "logical relationship" in terms of the purpose behind Rule 13(a):

> "The phrase 'logical relationship' is given meaning by the purpose of the rule which it was designed to implement. Thus, a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action."

*Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3rd Cir.1961).

AEC contends that GMC's claims in this action were compulsory counterclaims to AEC's counterclaim in the Arkansas action, because they arose out of "the then on-going commercial dealings between [GMC] and [AEC]," which was the subject matter of AEC's adjudicated counterclaim. Defendant's motion at 12–14. Making all assumptions from the pleadings in favor of GMC, the parties' "then on-going commercial dealings" was not the subject matter of AEC's counterclaim, nor do any of GMC's present claims arise out of the transaction or occurrence that was the subject matter of AEC's counterclaim. Because the present suit does not involve the same claim or cause of action which was litigated or could have been litigated in the Arkansas action, I will deny AEC's motion.

GMC initiated the Arkansas action in January, 1996 by bringing a claim against AEC for payment "for goods, wares, merchandise and/or services rendered purchased by [AEC] and delivered to [AEC] at their special request." Defendant's motion, Ex. A ("Arkansas Complaint"). AEC answered GMC's claim in the Arkansas action and asserted a counterclaim against GMC. The counterclaim included the affirmative defense that GMC owes AEC money "for defective goods, wares, merchandise and/or services provided by plaintiff to defendant." Defendant's Motion, Ex. B. AEC also counterclaimed for "certain sums owed … under the terms of an indemnification agreement." Defendant's motion, Ex. B ("Counterclaim").

■ In January, 2000, the Arkansas court granted GMC's request to voluntarily dismiss its claim without prejudice. The parties do not dispute that no court has rendered a final judgment on this claim. There is no evidence that AEC contested GMC's request for a voluntary dismissal without prejudice. By the

court's order dismissing the claim without prejudice, AEC lost the opportunity to compel GMC to litigate this claim in the Arkansas courts. "Res judicata does not bar a plaintiff from refiling a claim after he or she has exercised the absolute right to one voluntary dismissal under Ark. R.Civ.P. 41(a)." *Linn*, 14 S.W.3d at 503 (citing *Lemon v. Laws*, 305 Ark. 143, 806 S.W.2d 1 (1991)).

The Arkansas court did enter a final judgement on AEC's counterclaim for indemnification. This counterclaim, more fully set forth in the Amended Counterclaim, was premised on the Chiuminatta action in which Chiuminatta sued both parties for patent infringement. The counterclaim alleged that, pursuant to that action, AEC paid Chiuminatta $40,000.00 in judgement. The counterclaim further alleged that GMC's saws did in fact infringe the Chiuminatta patent and that GMC breached its warranty that its products "would be delivered [to AEC] free of the rightful claim of any third person by way of infringement or the like." Amended Counterclaim at ¶ 12. AEC sought indemnification by GMC for the sums paid by AEC to Chiuminatta, as well as attorney's fees and costs incurred by AEC in defense of the Chiuminatta action.

■ AEC now argues that GMC's present claims are barred by the Arkansas court's adjudication of AEC's counterclaim, because GMC's claims were compulsory counterclaims to that claim. AEC bears the burden of showing that GMC's claims are precluded. *See United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3rd Cir.1984) ("The affirmative defense of res judicata requires that the party asserting such a bar bear the burden of showing that it applies") (citations omitted). AEC asserts that GMC's claims arose out of "the then on-going commercial dealings between [GMC] and [AEC]," which was

the subject matter of AEC's adjudicated counterclaim. Despite the fact-sensitive nature of the "same transaction or occurrence" test under Rule 13(a) and the "same cause of action" test under the doctrine of res judicata, AEC does little more than list, in part, the allegations in both actions and provide its vague conclusion that both actions relate to the commercial dealings between the parties. Although the complaint in this action is far from clear as to what GMC's present claims precisely are, there is no basis in the pleadings for precluding GMC's claims as compulsory counterclaims to AEC's counterclaim in the Arkansas action.

Among the five claims that AEC moves to dismiss, GMC's claims for breach of contract, breach of fiduciary duty, and misappropriation of trade secret, are based on the agreement between the parties pertaining to AEC's sale of GMC's products. These three claims seek compensation for AEC's alleged failure to pay for goods delivered pursuant to and material breaches of this agreement. With respect to these three claims, GMC alleges that:

- "Since in or before February 1994, through and including October 1995, GMC and AEC consistently engaged in an ongoing commercial relationship in which AEC performed as the exclusive distributor of Saws, Blades and Arbors for GMC (the "Commercial Relationship") . . .

- The course of performance, course of dealing, and usage of trade were ratified by the parties in a letter of understanding ("Letter of Understanding"), a proposed agreement ("Proposed Agreement") and an indemnification agreement ("Indemnification Agreement"), all of which were drafted by GMC's former counsel John W. Logan, Jr. ("Logan") in or around the winter/spring of 1993–94 (hereinafter

collectively referred to as the "Agreement"). AEC neither made nor expressed any objection to the Agreement . . .

- As GMC's exclusive distributor, AEC was entrusted with confidential information regarding the creation and design of the Saws, including the GM–150 (the "Confidential Information") . . .

- The Confidential Information is a trade secret ("Trade Secret") . . .

- It is believed and therefore averred that despite GMC's entrustment of the Confidential Information to AEC, AEC has intentionally and maliciously duplicated the GM–150, all to its own gain and benefit, and to the serious detriment of Zuzelo and GMC . . .

- As exclusive distributor for GMC, AEC had a duty to use its best efforts to sell the GMC Saws, Blades and Arbors.

- As the exclusive distributor of GMC's Saws, Blades and Arbors, AEC stood in a fiduciary relationship to GMC.

- AEC failed to use its best efforts in the sale of the GMC Saws, Blades and Arbors.

- It is believed and therefore averred that [AEC] resold the Saws, Blades and Arbors at or about three (3) times the cost charged to it by GMC ("Markup") . . .

- The commercial relationship came to an end in or around October 1995 due, *inter alia*, to the failure of AEC to pay amounts owed to GMC and AEC's material breaches of the Agreement . . ."

Complaint at 3–7. These three claims, in essence, more fully set forth the claim that was voluntarily dismissed in the Arkansas action. These three claims and the claim previously dismissed all seek compensation for AEC's conduct that allegedly violated the agreement between the parties pertaining to AEC's sale of GMC's products. Again, GMC is not barred from refiling it by the doctrine of res judicata. *See Linn,* 14 S.W.3d at 503 (citing *Lemon v. Laws,* 305 Ark. 143, 806 S.W.2d 1 (1991)).

Even if none of GMC's present claims are treated as the same claim that was voluntarily dismissed in the Arkansas action, they do not arise out of the same cause of action or the same transaction or occurrence that was the subject of AEC's adjudicated counterclaim. The Chiuminatta action and the indemnification agreement were the subject of AEC's counterclaim. In contrast, GMC's claims for breach of contract, breach of fiduciary duty, and misappropriation of trade secret arose out of the alleged agreement between the parties pertaining to AEC's sale of GMC's products. These claims do not directly implicate either the Chiuminatta action or the indemnification agreement. When the same parties enter into more than one agreement, each agreement may be viewed as a separate transaction although they both arise out of the same underlying relationship between the parties. *See United–Bilt Homes, Inc. v. Sampson,* 315 Ark. 156, 864 S.W.2d 861 (1993). AEC's allegation in the counterclaim that GMC breached its warranty of title and warranty against infringement does implicate the agreement at issue in GMC's claims pertaining to AEC's sale of GMC's products. However, this allegation does not alter the fact that the counterclaim arose out of the Chiuminatta action and the indemnification agreement, not the agreement pertaining to AEC's sale of GMC's products. AEC may not bootstrap the settlement in the Chiuminatta action, in which it admitted infringement, in order to now preclude GMC's claims that arose out of events that are separate and apart

from the Chiuminatta action and the indemnification agreement.

GMC's claims for negligent misrepresentation and fraudulent misrepresentation are premised on events that allegedly occurred after the parties terminated their business relationship in October, 1995. The alleged "misrepresentation" that is the subject of these claims occurred in December 1995, after GMC ceased delivery of all of its products to AEC, when AEC employees allegedly misrepresented themselves as independent distributors looking for GMC replacement parts. Based on the pleadings, these claims in no way relate to the Chiuminatta action or the indemnification agreement. Furthermore, these two claims do not, as AEC argues, arise out of the parties on-going commercial relationship. The events from which these claims arose occurred after the parties terminated their commercial relationship.

It may be that resolution of GMC's claims in this action will turn on some of the same issues that were resolved in the Arkansas action, barring relitigation of any such issues here. GMC does include the Chiuminatta action and the indemnification agreement in the factual allegations of the complaint. However, issue preclusion has not been argued by either party nor can it be determined from the pleadings alone. AEC has made no argument for precluding GMC's claims other than the vague statement that AEC's counterclaim and GMC's claims are all based on the parties' on-going commercial dealings. Such a vague similarity between the claims is not sufficient to preclude GMC from litigating its claims in this action. AEC has failed to meet its burden. Even if the Chiuminatta action and the indemnification agreement are tangentially related to some of GMC's claims in this action, the pleadings do not indicate that GMC's claims arose out of the same cause of action or the same transaction or occurrence that was the subject of AEC's counterclaim. Because the present suit does not involve the same claim or cause of action which was litigated or could have been litigated in the Arkansas action, GMC may proceed on its present claims in this court.

### *ORDER*

**AND NOW**, this _____ day of May, 2001, it is **ORDERED** that defendant's motion to limit claims under the doctrine of Res Judicata (docket entry # 35) is **DENIED**.